# 2008 DTA 104

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN-PONCE**
**PANEL VI**

SEGUNDO TENIENTE CUERPO DE VIGILANTES, DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES: FÉLIX OCASIO VARGAS, HENRY COLÓN VÁZQUEZ, VÍCTOR M. MARRERO NEGRÓN, FRANCISCO SILVA COLLAZO, JUAN A. CEBALLOS GONZÁLEZ
Recurrentes

v.

OFICINA DE ÉTICA GUBERNAMENTAL
Recurrida

---------------------------------

SARGENTO CUERPO DE VIGILANTES, DEPARTAMENTO DE RECURSO NATURALES Y AMBIENTALES: JOSÉ A. FELICIANO VÁZQUEZ, BENJAMÍN LOZADA PABÓN, JUAN C. MERCADO VÉLEZ, RUBÉN RODRÍGUEZ GONZÁLEZ, CÁLEX FIGUEROA BOBÉ
Recurrentes

v.

OFICINA DE ÉTICA GUBERNAMENTAL
Recurrida

---------------------------

CAPITÁN CUERPO DE VIGILANTES, DEPARTAMENTO DE RECURSO NATURALES Y AMBIENTALES: NELSON ROLDÁN CALERO, SAÚL ZAPATA RIPOLLS, VÍCTOR L. RAMOS

RODRÍGUEZ, EDWIN D. MOJICA RODRÍGUEZ, JEANNETTE SOLÍS ARROYO,
WILLIAM SUÁREZ MALDONADO, JOSÉ A. ROSARIO DE LA CRUZ
Recurrentes

v.

OFICINA DE ÉTICA GUBERNAMENTAL
Recurrida

-------------------------------

CORONEL CUERPO DE VIGILANTES, DEPARTAMENTO DE RECURSO NATURALES
Y AMBIENTALES; FÉLIX SALÁS QUIÑONES
Recurrentes

v.

OFICINA DE ÉTICA GUBERNAMENTAL
Recurrida

Núms. Cons. KLRA-2008-00524 / KLRA-2008-00576
KLRA-2008-00579 / KLRA-2008-00588

San Juan, Puerto Rico, a 20 de agosto de 2008

Panel integrado por su Presidente, el Juez Brau Ramírez,
y los Jueces Morales Rodríguez y Cortés Trigo

Cortés Trigo, Juez Ponente

**I**

Mediante comunicación de 8 de marzo de 2005, el Secretario del Departamento de Recursos Naturales y Ambientales (DRNA) solicitó a la Oficina de Ética Gubernamental (OEG) que, conforme la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico, Ley Núm. 12 de 24 de julio de 1985, según enmendada (Ley 12), 3 L.P.R.A. secs. 1801 y ss., incluyera, entre otros, los puestos de Coronel, Capitán, Teniente Segundo y Sargento del Cuerpo de Vigilantes del DRNA (Puestos) en la orden de puestos obligados a presentar informes financieros en la OEG por la naturaleza sensitiva de sus funciones. Acompañó las hojas de especificaciones de clase de los Puestos.

La OEG le solicitó al Secretario cierta información, incluyendo el nombre y dirección de las personas que ocupaban los puestos. Además, le indicó que evaluaría la solicitud tomando en cuenta la hoja de deberes de los puestos, las objeciones y cualquier otra información a la luz de los siguientes criterios incluidos en la Carta Circular de la OEG de 23 de agosto de 1993: 1) si el puesto tiene la facultad de conceder permisos, licencias, órdenes, autorizaciones, exenciones, resoluciones o contratos; formalizar contratos de todo tipo, así como certificar los pagos de los mismos; intervenir en procedimientos y adjudicación de subastas; transar o llegar a acuerdos en acciones presentadas ante tribunales o sobre deudas entre personas naturales o jurídicas y cualquier organismo del Gobierno; determinar las especificaciones en procedimientos de contratación de servicios, subastas, adquisición de equipo y cualquier otra propiedad; y hacer determinaciones o recomendaciones para disposición de propiedades y otros equipos o valores a entidades privadas; 2) la importancia o envergadura de las funciones asignadas al puesto que recomienda; 3) las funciones adicionales asignadas por el jefe de la agencia no incluidas en su hoja de deberes, pero con responsabilidades inherentes a las mencionadas anteriormente; 4) si el puesto le permite al funcionario que lo ocupa establecer la política pública de la agencia o tomar decisiones de alto nivel.

El Secretario cumplió con lo requerido y la OEG notificó a las personas que ocupaban los puestos la solicitud del Secretario y les concedió un término para objetar dicha petición. Los recurrentes presentaron sus objeciones por escrito. Esencialmente adujeron que no se cumplían los criterios núms. 1, 3 y 4. No solicitaron vista evidenciaria.

Luego de evaluar la solicitud, las objeciones y los documentos presentados por las partes, el Área de Auditoría de Informes Financieros de la OEG recomendó a la Directora Ejecutiva Interina de la OEG que incluyera los puestos en la orden de puestos obligados a presentar informes financieros ante la OEG. Conforme esta recomendación y lo establecido en el Artículo 4.1 (a) (10) de la Ley 12, 3 L.P.R.A. sec. 1831 (a) (10), la OEG aprobó la Orden Núm. ORD-AAIF-2006-018 (DE-12), Orden de Puestos 2006 de 12 de diciembre de 2007 (Orden 2006), incluyendo los puestos en los puestos obligados a presentar informes financieros en la OEG.

Oportunamente los recurrentes presentaron escritos de reconsideración. Éstos fueron acogidos mediante órdenes de 9 y 10 de enero de 2008, de conformidad con el Artículo 3.15 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (LPAU), Ley Núm. 170 de 12 de agosto de 1988, según enmendado, 3 L.P.R.A. sec. 2165. El 17 de marzo de 2008, la OEG emitió orden consolidando los asuntos y prorrogando el término para resolverlos hasta el 15 de abril de 2008.

El 31 de marzo y 1 de abril de 2008, la OEG celebró vistas informales a las cuales comparecieron los recurrentes. Éstos reiteraron los argumentos presentados en sus escritos de oposición y reconsideración y

presentaron como prueba el Reglamento de Organización y Administración de los Recursos Humanos del Cuerpo de Vigilantes del DRNA, Reglamento Núm. 7336 de 18 de abril de 2007 (Reglamento), y el Convenio Colectivo entre el DRNA y los Vigilantes del Cuerpo de Vigilantes del DRNA (Convenio Colectivo). La OEG le solicitó al DRNA que informara si el Convenio Colectivo modificó las funciones de los puestos y la agencia certificó que no las había modificado.

Mediante dictámenes de 15, 18, 25 y 29 de abril de 2008, la OEG se reiteró en su determinación. Inconformes acudieron los recurrentes mediante recursos de revisión separados, los cuales consolidamos el 11 de junio de 2008. Señalan que:

*"Erró la Oficina de Ética Gubernamental al incluir el puesto de [Coronel, Capitán, Teniente II y Sargento] entre los puestos obligados a rendir Informes Financieros basándose en el criterio sobre la importancia o envergadura de las funciones asignadas al puesto y que toma decisiones de alto nivel cuando la evidencia presentada demuestra lo contrario."*

La OEG presentó su alegato. Resolvemos.

## II

La facultad revisora de los tribunales de las decisiones emitidas por una agencia administrativas incluye las siguientes áreas: (1) concesión del remedio apropiado; (2) revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial; y (3) revisión de las conclusiones de derecho en su totalidad. *T-JAC, Inc. v. Caguas Centrum Limited,* 148 D.P.R. 70, 80-81 (1999); *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64, 129 (1998); D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da. Ed., Bogotá, Forum, 2001, pág. 534.

La función revisora del tribunal, aunque restringida, tiene como propósito fundamental delimitar la discreción de los organismos administrativos y velar porque sus actuaciones sean conformes a la ley y estén dentro del marco del poder delegado. *Misión Ind. P.R. v. J.P.,* 146 D.P.R., a la pág. 129.

Este ejercicio por parte del tribunal está enmarcado en dos principios fundamentales que postula la LPAU, 3 L.P.R.A. sec. 2101 y ss. *"Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo."* 3 L.P.R.A. sec. 2175. Sin embargo, *"[l]as conclusiones de derecho serán revisadas en todos sus aspectos por el tribunal."* Id. Es, por tanto, indispensable que la agencia realice determinaciones de hechos y conclusiones de derecho que puedan proporcionar a los tribunales la base en la que descansó la decisión del organismo administrativo. De esta forma, los tribunales estarán en posición de descargar su función revisora responsablemente.

El criterio rector en la revisión judicial de una determinación de hechos de una agencia es la existencia de evidencia sustancial. A estos fines, se ha definido evidencia sustancial como *"aquella [evidencia] pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión".* Ramírez v. Depto. de Salud, 147 D.P.R. 901, 905 (1999). De ordinario, los tribunales no intervendrán en las determinaciones de hechos de las agencias, mientras exista evidencia sustancial en apoyo de las mismas. *Pacheco v. Estancias de Yauco,* 160 D.P.R. 409, 432 (2003). Dicho análisis requiere que la evidencia sea considerada en su totalidad; esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 D.P.R. 425, 437 (1997). Esta norma persigue evitar que los tribunales sustituyan el criterio de la agencia en asuntos enmarcados en su destreza y especialización por el criterio del tribunal revisor.

Para sostener la posición de que no existe evidencia sustancial que apoye las determinaciones de la agencia administrativa, la parte afectada debe demostrar que existe *"otra prueba en el récord que razonablemente*

*reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada... y hasta el punto que se demuestre claramente que la decisión [de la agencia] ... no está justificada por una evaluación justa del peso de la prueba."* Hilton Hotels v. Junta Salario Mínimo, 74 D.P.R. 670, 686 (1953). La prueba ofrecida deberá desfavorecer la presunción de que la determinación del organismo administrativo se desprende de la totalidad de la prueba que éste tuvo ante su consideración. Véase, *Ramírez v. Depto. de Salud,* 147 D.P.R., a las págs. 905-906.

En cuanto a las determinaciones de derecho de la agencia, el tribunal podrá revisarlas en todos sus aspectos, aunque observando un nivel de deferencia por el criterio de la agencia en aquella legislación que ésta implante. Véase, *Rebollo v. Yiyi Motors,* 161 D.P.R. 69, 77 (2004); *P.R.T.C. v. J. Reg. Tel. de P.R.,* 151 D.P.R. 269, 282 (2000). Esta norma no presupone que el tribunal revisor pueda descartar libremente las interpretaciones o conclusiones de la agencia administrativa, sino que les dará deferencia en la medida que éstas sean razonables. *Misión Ind. P.R. v. J.P.,* 146 D.P.R., a la pág. 132. Por tanto, el tribunal revisor sostendrá las conclusiones de la agencia mientras las mismas sean cónsonas con el propósito legislativo y no sean arbitrarias, ilegales o irrazonables. *Id.; T-JAC, Inc. v. Caguas Centrum Limited,* 148 D.P.R., a la pág. 80.

La norma establecida es que las decisiones de los organismos administrativos se presumen correctas y gozan de la mayor deferencia por los tribunales. *Rivera Concepción v. A.R.P.E.,* 152 D.P.R. 116, 123 (2000). Si las interpretaciones de la agencia especializada son razonables y consistentes con el propósito legislativo que inspiran los estatutos directivos, el tribunal debe abstenerse de intervenir con ellas. *Costa, Piovanetti v. Caguas Expressway,* 149 D.P.R. 881, 889 (1999).

Por otro lado, la Ley 12 persigue restituir y fortalecer la confianza del pueblo en su Gobierno y en sus servidores públicos. La aprobación de esta legislación reflejó la necesidad de adoptar nuevas medidas legislativas que fueran eficaces para prevenir y penalizar el comportamiento delictivo de aquellos funcionarios que, en el desempeño de sus labores gubernamentales, vulneraran los principios básicos de una ética de excelencia. Exposición de Motivos de la Ley 12, Leyes de Puerto Rico, 1985, pág. 709.

Así pues, la Ley 12 instituye diversos mecanismos para prevenir y combatir la corrupción gubernamental en todas sus manifestaciones. Como parte del esfuerzo del Gobierno por terminar con las actuaciones deshonestas y evitar los conflictos de intereses, se creó la OEG. La misma tiene *"a su cargo velar porque se cumplan estrictamente las disposiciones de ley que establecen determinadas prohibiciones a los funcionarios y empleados públicos por razón de sus cargos o empleos."* Art. 2.1, 3 L.P.R.A. sec. 1811.

Esta legislación dispone que el Director Ejecutivo de la OEG tiene el poder para interpretar, aplicar y hacer cumplir las disposiciones de la Ley 12 y las reglas que rigen las cuestiones de ética, conflicto de intereses y presentación de informes. Art. 2.4 (b), 3 L.P.R.A. sec. 1814 (b). De igual modo, el Director Ejecutivo tiene la facultad para resolver las controversias suscitadas sobre la aplicación de la Ley 12. Art. 2.4 (c), 3 L.P.R.A. sec. 1814 (c).

Para asegurar el cumplimiento de estos propósitos, el legislador confirió a la OEG la prerrogativa de requerir la presentación de informes financieros anuales a una serie de servidores públicos. Respecto a ello, el Tribunal Supremo de Puerto Rico ha expresado que *"[e]l que los funcionarios públicos se conduzcan de manera honrada en todas sus transacciones financieras es un interés apremiante del Estado que justifica la intervención con la intimidad del funcionario público."* O.E.G. v. Cordero, Rivera, 154 D.P.R. 827, 837 (2001).

A estos fines, el citado Artículo 4.1 (a) de la Ley 12 establece:

*"(a) Las disposiciones de este subcapítulo que requieren someter informes financieros son aplicables a los*

*siguientes funcionarios y empleados públicos:*

*(1) El Gobernador.*

*(2) El Contador de Puerto Rico y el Procurador del Ciudadano.*

*(3) Funcionarios de la Rama Ejecutiva cuyos nombramientos requieran el consejo y consentimiento del Senado, o del Senado y la Cámara de Representantes.*

*(4) Jefes de agencias del Gobierno del Estado Libre Asociado de Puerto Rico a nivel de Secretario, Subsecretario y los jefes de las corporaciones municipales.*

*(5) Presidentes, vicepresidentes, directores y subdirectores ejecutivos de las corporaciones públicas y otras entidades gubernamentales.*

*(6) Los miembros de la Asamblea Legislativa, el Director de la Oficina de Servicios Legislativos y el Superintendente del Capitolio, sujeto a lo dispuesto en la sec. 1840(d) de este título.*

*(7) Alcaldes, vicealcaldes, directores de finanzas o persona que ocupe un puesto similar.*

*(8) Los miembros de la Rama Judicial, sujeto a lo dispuesto en la sec. 1840(e) de este título.*

*(9) El Presidente de la Comisión Estatal de Elecciones; el Administrador de los Sistemas de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades, o de cualquier plan de pensiones o retiro establecido por la Legislatura de Puerto Rico o implantado por las corporaciones públicas.*

*(10) Cualquier otro cargo o puesto, incluyendo, pero no limitado al cargo de secretario auxiliar, director de negociado o jefe de oficina, cuya inclusión sea recomendada por el jefe de la agencia y ordenada por el Director de la Oficina. 3 L.P.R.A. sec. 1831 (a)."*

Esta disposición claramente establece que su enumeración no es taxativa, ya que, a pesar de preceptuar una lista de servidores públicos específicos en los incisos (1) al (9), el inciso (10) permite a la OEG requerir la presentación de los informes financieros a cualquier otro servidor público. En vista de ello, es evidente que el Director de la OEG tiene la facultad de requerir los informes financieros a otros funcionarios distintos a los específicamente mencionados en la Ley 12.

Es menester destacar, además, que la categoría de *"servidores públicos"* al tenor de la Ley 12 se desdobla entre funcionarios públicos y empleados públicos. Así, ésta aclara el significado de cada término de la siguiente manera:

*"(a) Funcionario público. – Incluye aquellas personas que ocupan cargos o empleos en el Gobierno del Estado Libre Asociado de Puerto Rico que están investidos de parte de la soberanía del Estado, por lo que intervienen en la formulación e implantación de la política pública.*

*(b) Empleado público. – Incluye aquellas personas que ocupan cargos o empleos en el Gobierno del Estado Libre Asociado de Puerto Rico que no están investidos de parte de la soberanía del Estado y comprende los empleados públicos regulares e irregulares....".* Art. 1.2 (a) y (b), 3 L.P.R.A. sec. 1802 (a) y (b).

De este Artículo puede colegirse que la OEG también posee la facultad de requerir los informes financieros a los empleados públicos que no están investidos de parte de la soberanía del Estado. A estos fines, los empleados de carrera, quienes a pesar de no constar entre aquellos llamados expresamente por la Ley 12 a

rendir los mismos, se les puede exigir rendir estos informes cuando su inclusión haya sido recomendada por el Jefe de la Agencia en cuestión y, a su vez, haya sido ordenada por el Director de la OEG.

## III

Los recurrentes sostienen que la hoja de deberes considerada por la OEG no está actualizada conforme al Reglamento y al Convenio Colectivo, los cuales limitan sus funciones de supervisión al establecer que corresponde al Comisionado del Cuerpo de Vigilantes (Comisionado) la responsabilidad de promulgar la política pública y procedimientos y normas generales del Cuerpo de Vigilantes. Además, sostienen que no toman decisiones de alto nivel porque el Secretario es quien único aplica medidas disciplinarias y toma tales decisiones, no participan en la formulación e implantación de la política pública del DRNA, ni en las intervenciones de sus supervisados, por lo que deben ser excluidos de presentar los informes financieros ante la OEG.

Por su parte, la recurrida arguye que las decisiones recurridas se basaron en evidencia sustancial porque de los documentos presentados se desprende que las funciones asignadas a los puestos tienen la importancia y envergadura que ameritan que se incluyan en la Orden 2006 y tales funciones inciden sobre el proceso de toma de decisiones de alto nivel dentro del Cuerpo de Vigilantes. Además, indica que el DRNA certificó que el Convenio Colectivo no modificó las funciones de los puestos.

Del expediente surge que la OEG tuvo ante su consideración las hojas de descripciones y especificaciones de los puestos, las cuales fueron sometidas por el Secretario del DRNA junto con su petición. Al respecto, el formulario del DRNA titulado *"Descripción del Puesto"* correspondiente al puesto de Coronel, demuestra que éste realiza trabajos de gran complejidad y responsabilidad que conllevan colaborar con el Comisionado en la planificación, organización, coordinación y dirección del Cuerpo de Vigilantes bajo la supervisión administrativa de éste y ejerce un alto grado de iniciativa y criterio propio en el desempeño de sus funciones.

El Coronel tiene, entre otras, las siguientes funciones: (1) coordina las operaciones, investigaciones e inspecciones especiales, incluyendo las de encubiertos; (2) comparece en representación del Comisionado ante las autoridades correspondientes y testifica cuando así sea necesario; (3) sustituye al Comisionado durante sus ausencias y asume los deberes y responsabilidades de éste; (4) colabora en la supervisión de las tareas administrativas que incluyen, transacciones de personal, presupuesto, contratos y compras; y (5) analiza y hace recomendaciones sobre proyectos de ley relacionados a la conservación de los recursos naturales y ambientales. Además, en el encasillado 12 del aludido documento se indica que, en cuanto al recibo de instrucciones, el Coronel puede utilizar su propio criterio, aunque sujeto a revisión, la cual, según el encasillado 13, es una de carácter superficial.

Por su parte, según el formulario *"Descripción del Puesto"*, el Capitán está bajo la supervisión inmediata del Comisionado, quien le imparte instrucciones generales. Además, tiene, entre otros, los siguientes deberes: planifica, dirige, coordina y supervisa planes de trabajo para llevar acabo actividades de vigilancia y protección de los recursos naturales y ambientales en las diferentes unidades de trabajo de cada zona; establece normas y procedimientos internos de las actividades que se desarrollan para las diferentes zonas; y desarrolla estudios, evalúa y somete recomendaciones de los reglamentos, normas y procedimientos del Cuerpo de Vigilantes.

Por otro lado, según el formulario *"Descripción del Puesto"*, correspondiente al Segundo Teniente, éste labora bajo la supervisión del Primer Teniente, quien le imparte directrices generales con relación a las encomiendas comunes de trabajo, los objetivos y alcance de sus funciones e instrucciones específicas en situaciones nuevas, poco comunes o complejas. Además, el Segundo Teniente ejerce, entre otras, las siguientes funciones: (1) realiza trabajos en la planificación, coordinación, supervisión y evaluación de las actividades de vigilancia, custodia, protección defensa y conservación de los recursos naturales y ambientales que se realicen en su área geográfica donde está ubicado su destacamento; (2) planifica, coordina y evalúa la labor de un grupo

de Vigilantes asignados a diferentes áreas geográficas adscrita a la Unidad; (3) recomienda normas operacionales y colabora efectivamente en la elaboración de procedimientos y operaciones relacionadas con vigilancia, custodia, protección y defensa de los recursos naturales y el ambiente; y (4) supervisa y coordina el trabajo de los sargentos y vigilantes.

Por último, según el formulario *"Descripción del Puesto"*, el Sargento, bajo la dirección general de un Segundo Teniente, tiene, entre otros deberes, los siguientes: es responsable por la supervisión directa y personal de un grupo de Vigilantes dedicados a la vigilancia, custodia, protección, defensa y conservación de los recursos naturales y ambientales haciendo cumplir las leyes y reglamentos que administra el DRNA; vela por la asistencia de los Vigilantes y el fiel cumplimiento de sus deberes y responsabilidades; provee ayuda y apoyo a la Policía Estatal en situaciones de violación a las Leyes de Tránsito, Sustancias Controladas y otras, cuando las mismas ocurran en bosques, playas, viveros, manglares y otras áreas que estén bajo la jurisdicción del DRNA; brinda las instrucciones pertinentes para enfrentar violaciones de Ley; y comparece ante las autoridades correspondientes y testifica, cuando así sea necesario, sobre las violaciones a las leyes y reglamentos vigentes encaminados a la protección y conservación de los recursos naturales del país.

Además, todos los puestos tienen como función principal velar porque se cumplan las leyes y reglamentos encaminados a la protección, conservación y supervisión de los recursos naturales y ambientales y pueden emitir boletos, multas y órdenes de paralización de actividades u operaciones bajo la jurisdicción del DRNA que se esté realizando sin autorización del Secretario, o cuando dichas actividades debidamente autorizadas se estuvieran realizando de forma irregular. También portan armas y pueden incautarse de toda especie de vida silvestre o acuática, material de la corteza terrestre y forestal poseído ilegalmente. Sec. 5.2 del Reglamento.

Advertimos del expediente que las funciones descritas en las hojas de deberes de los recurrentes demuestran razonablemente que dichas funciones tienen la importancia y envergadura que ameritan que los puestos se incluyan en los puestos obligados a presentar informes financieros en la OEG y tales funciones inciden sobre el proceso de toma de decisiones de alto nivel dentro del Cuerpo de Vigilantes.

Primeramente, notamos que el Coronel es el funcionario que sustituye al Comisionado durante sus ausencias asumiendo las responsabilidades de éste. Además, es quien colabora con el Comisionado en la planificación, organización, coordinación y dirección del Cuerpo de Vigilantes y ejerce un alto grado de iniciativa y criterio propio en el desempeño de sus funciones. Además, analiza y hace recomendaciones sobre proyectos de ley relacionados a la conservación de los recursos naturales y ambientales.

Por su parte, los Capitanes, Segundos Tenientes y Sargentos tienen funciones de gran importancia y envergadura pues, entre otros deberes, laboran en la planificación, dirección, coordinación, supervisión y evaluación de los planes de trabajo y las actividades de vigilancia, custodia, protección defensa y conservación de los recursos naturales y ambientales que se realizan en las diferentes unidades de trabajo y en el área geográfica donde está ubicado su destacamento y supervisan directamente al personal dedicado a la vigilancia, custodia, protección, defensa y conservación de los recursos naturales y ambientales, respectivamente.

Además, dentro de sus funciones están las de comparecer ante las autoridades correspondientes y testificar sobre las violaciones a las leyes y reglamentos vigentes encaminados a la protección y conservación de los recursos naturales y ambientales y someter recomendaciones de los reglamentos, normas y procedimientos del Cuerpo de Vigilantes. Se incluyen igualmente como otros deberes y facultades las de velar por el cumplimiento de las leyes y reglamentos encaminados a la protección, conservación y supervisión de los recursos naturales y ambientales, emitir boletos, multas y órdenes de paralización de actividades u operaciones bajo la jurisdicción de la agencia irregulares o no autorizadas, portar armas y poder incautarse de toda especie de vida silvestre o acuática, material de la corteza terrestre y forestal poseído ilegalmente.

Como puede apreciarse, por medio de las funciones antes descritas, resulta razonable concluir que estas facultades son claramente de gran importancia y envergadura. Además, inciden sobre el proceso de toma de decisiones de alto nivel dentro de la agencia porque los recurrentes pueden asesorar y recomendar al Comisionado sobre distintos aspectos importantes y sensitivos del Cuerpo de Vigilantes.

En resumen, los recurrentes no han demostrado que no exista evidencia sustancial en el expediente que amerite intervenir con las decisiones recurridas. En consecuencia, las conclusiones de la recurrida son cónsonas con el propósito de la Ley 12 y no son arbitrarias, ilegales o irrazonables, por lo que debemos sostenerlas.

**IV**

Por los fundamentos expuestos, se dicta sentencia confirmando las resoluciones recurridas.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones